J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
**Kerley Schaffer LLP**
1939 Harrison Street, Suite 900
Oakland, California 94612
Telephone: (510) 379-5801
service@kslaw.us

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASHLEY HERNANDEZ,** an individual, and **SAMSON DALLAS SHAKE**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**STATE FARM GENERAL INSURANCE COMPANY,** an Illinois corporation, and **DOES 1 through 10**,<br><br>Defendants. | Case No.: 5:26-cv-01831-EKL<br><br>**PLAINTIFFS' OPPOSITION TO STATE FARM GENERAL INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date: August 5, 2026<br>Time: 10:30 a.m.<br>Courtroom: 7 |

1

Opposition to State Farm's Motion to Dismiss

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 6

I.    The Policy Does Not Unambiguously Exclude Damage Caused by the Failure of a
Subsurface Pressurized Supply Line.................................................................................. 7

    A.    The Policy and the Applicable Rules of Interpretation.................................................. 7

        1.    Interpretation of a Property Insurance Policy. .............................................. 7

        2.    The Policy is *All Risk* and Expressly Covers Damage Resulting from an Abrupt and
        Accidental Discharge of Water from a Plumbing System. .............................................. 8

        3.    The "Below the Surface" Exclusion. ........................................................... 9

    B.    The Express Grant of Coverage is Irreconcilable with State Farm's Reading of the
    Policy Language.................................................................................................... 10

    C.    As the *Varela* Court Concluded, the "Water Below the Surface" Exclusion is Fatally
    Ambiguous. ......................................................................................................... 10

        1.    State Farm Could Have, but Did Not, Unambiguously Exclude from its Grant of
        Coverage for "Abrupt and accidental discharge … of water … from within a plumbing …
        system …" the Subset of Losses in which Plumbing Lines are Below Ground. .............. 11

        2.    The Listed Water Exclusions that Do Not Specifically Include Plumbing System
        Failures are Directed at External Water Hazards................................................ 13

        3.    Courts Typically Find the "Water Below the Surface" Exclusion to Apply to Ground
        Water or Natural Water Sources. .............................................................. 14

        4.    The Differences Between the Hernandez and Varela Policies Do Not Save the
        Exclusion From a Finding of Fatal Ambiguity. ............................................... 15

            a.    State Farm Did Not Expressly Tie the Exclusion to the Plumbing System.......... 15

            b.    State Farm Did Not Use "Regardless of the Cause" Prefatory Language. ........... 16

Opposition to State Farm Motion to Dismiss

     c.    Prefatory Language Relating to the Location of the Loss Did Not Solve State Farm's Ambiguity Problem. .......................................................................... 16

     d.    The Addition of "Sewage" to the Exclusion Did Not Solve State Farm's Ambiguity Problem. ................................................................................... 17

   D.   Conclusion. ...................................................................................................... 20

II.   The Facts Alleged in the FAC are Sufficient to Survive Rule 12(b)(6) Scrutiny............. 20

   A.   The FAC Adequately Alleges the Exclusion Does Not Apply to This Loss. ............... 20

     1.   The Exclusion Does Not Apply Because the Failed Portion of the Plumbing Line Was Part of the Building Structure .................................................................... 20

     2.   The Exclusion Does Not Apply Because the Escaped Water Did Not Exert Pressure on or Seep or Leak Through the Building Structure. ........................................... 20

   B.   State Farm's Reliance on the Sham Pleading Doctrine is Misplaced. .......................... 21

   C.   State Farm's Reliance on the Incorporation Doctrine is Misplaced. ........................... 22

     1.   The Rule of Incorporation by Reference. ................................................................. 23

     2.   None of the Documents is Subject to Incorporation, and None Proves the Failed Portion of the PEX Supply Line Was Not Part of the Building Structure. ....................... 24

       a.    Exhibit B and E – Plumber's Invoices. ................................................................. 24

       b.    Exhibits C and D – Video and Photos. ................................................................. 26

III.   Plaintiffs' Allegations Relating to State Farm's Breach of the Implied Covenant of Good Faith and Fair Dealing are Sufficient. ......................................................................... 28

CONCLUSION ................................................................................................................... 30

Opposition to State Farm Motion to Dismiss

**Cases**

*Adrian Assocs. Gen. Contractors. v. Nat'l Sur. Corp.*,
   638 S.W.2d 138 (Tex. Ct. App.1982) ................................................................................... 15

*Ahluwalia v. Allied Prop. & Cas. Ins. Co.*,
   2012 WL 2681801 (E.D. Cal. July 6, 2012) ......................................................................... 12

*Anderson v. USAA Cas. Ins. Co.*,
   No. C 06-07948 WHA, 2008 WL 619004 (N.D. Cal. Mar. 4, 2008) ..................................... 14

*Andrews v. City of Saint Helens*,
   2024 WL 2116469 (D. Or., 2024) ......................................................................................... 21

*Broome v. Allstate Ins. Co.*,
   144 Ga. App. 318, 241 S.E.2d 34 (1977) ......................................................................... 10, 12

*Cantanucci v. Reliance Ins. Co.,*
   43 A.D.2d 622, 349 N.Y.S.2d 187 (3d Dep't), *aff'd,* 35 N.Y.2d 890, 364 N.Y.S.2d 890, 324
   N.E.2d 360 (1973) ................................................................................................................. 15

*Colella v. State Farm Fire & Cas. Co*,
   407 F. App'x 616 (3d Cir. 2011) .......................................................................................... 13

*Colonial Life & Accident Ins. Co. v. Super. Ct.*,
   31 Cal.3d 785 (1982) ............................................................................................................ 29

*Cozza ex rel. Cozza v. State Farm Fire & Cas. Co.*,
   440 F. App'x 73 (3d Cir. 2011) ............................................................................................ 15

*Hatley v. Truck Ins. Exch.*,
   261 Or. 606, 495 P.2d 1196 (1972) ...................................................................................... 15

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ........................................................................... 23, 24, 26, 28

*Kokhan v. Auto Club Ins. Co. of Fla.*,
   297 So.3d 570 (Fla. Dist. Ct. App. 2020) ....................................................... 13, 14, 15, 20

*Mellon v. Hingham Mut. Fire Ins. Co.*,
   19 Mass. App. Ct. 933, 472 N.E.2d 674 (1984) ................................................................. 15

*Moore v. Am. United Life Ins. Co.*,
   150 Cal.App.3d 610 (1984) .................................................................................................. 29

*New York Marine and Gen. Ins. Co. v. Penske Truck Leasing Co., L.P.*,
   457 F.Supp.3d 912 (D. Nev., 2020) ..................................................................................... 18

4

Opposition to State Farm Motion to Dismiss

*Northfield Ins. Co. v. Sandy's Place, LLC*,
    530 F.Supp.3d 952 (E.D. Cal., 2021)........................................................................ 9

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
    514 F.3d 856 (9th Cir. 2007) .................................................................................. 22

*Palek v. State Farm Fire & Cas. Co.*,
    2020 WL 5077461 (W.D. Pa. Aug. 26, 2020) ....................................................... 13

*Redstone Corp. v. Fire Ins. Exch.*,
    715 F.Supp. 300 (D. Colo. 1989)........................................................................... 15

*Robert Dorsen, Inc. v. Aetna Cas. & Sur. Co.*,
    562 F.Supp. 495 (D. D. C. 1983)........................................................................... 15

*Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability Plan*,
    39 F.Supp.3d 1103 (C.D. Cal., 2014). .................................................................. 12

*Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*,
    78 Cal.App.4th 847 (2000) .................................................................................... 29

*Varela v. State Farm Gen. Ins. Co.*,
    555 F.Supp.3d 983 (2021) ............................................................................. *passim*

*West v. Umialik Ins. Co.*,
    8 P.3d 1135 (Alaska 2000)..................................................................................... 15

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) ................................................................................. 17

**Statutes**

10 Cal. Code Regs. §2695.7(b)(1) ............................................................................. 6

10 Cal. Code Regs. §2695.7(d)................................................................................. 29

Cal. Civ. Code §1641.............................................................................................. 18

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................... 7, 23

Fed. R. Evid. 201 ................................................................................................... 23

Opposition to State Farm Motion to Dismiss

**INTRODUCTION**

Like millions of Californians, Ashley Hernandez and Samson Shake ("Hernandez") live in a home with a slab-on-grade foundation. Such slabs are typically poured over prepared fill material—usually a mixture of natural soil, sand, and gravel—to encourage drainage away from the foundation system. In many such homes, pressurized fresh-water plumbing supply lines are set prior to the slab being poured, run under the slab either in or over the fill, and emerge through the foundation to feed water into the home.

Sometimes those pressurized supply lines fail, which can discharge a catastrophic quantity of water into a home. On March 8, 2025, the Hernandezes awoke to find their home flooded and irreparably damaged. (First Amended Complaint ("FAC") ¶¶12-14.) They reported the loss to their property insurer, State Farm General Insurance Company ("State Farm"). (FAC ¶¶10, 16; Exhibit ("Exh.") A (Declaration Pages and Policy ("Policy").)[1] State Farm initially said it would cover the loss. (FAC ¶19.) That is not surprising because, as we discuss in detail below, the Policy affirmatively covers such losses.

State Farm never inspected the property. It never had any plumber, leak detection company, engineer, contractor, or forensic building consultant investigate. State Farm itself never investigated the source, cause, or impact of the supply line failure. (FAC ¶21.)

The source was a supply line in a half wall between the bathroom and pantry area. (FAC ¶15.) The specific failure point was on a vertical PEX (plastic tubing used for plumbing line) pressurized water supply line which arose out of fill material in an interior wall gap in the foundation. (FAC ¶¶24-26.)

On March 31, 2025, having never inspected the home, State Farm denied the claim. Although it had an obligation to fully set forth the facts it relied on to disclaim coverage (10 CCR §2695.7(b)(1)), State Farm said only this: "Our investigation and evaluation of your loss has determined that your damage is not covered by your policy. The pictures and videos that were sent in confirms (sic) the pipe break was below the slab." (FAC ¶31.)

---

[1] Exhibit A/Policy page references are to the internal page numbers in the Policy form as well as Docket No.20 page numbering.

Opposition to State Farm Motion to Dismiss

This lawsuit followed.

State Farm seeks the Court's order dismissing the case with prejudice pursuant to FRCP 12(b)(6). To avoid further proceedings, State Farm will have to clear two hurdles.

First, it will have to convince the Court that the Policy exclusion for "water below the surface of the ground" in the Policy unambiguously applies to damage resulting from an abrupt failure of a subsurface domestic freshwater supply line, a holding that is at odds with a recent federal court decision, *Varela v. State Farm General Insurance Company*, 555 F.Supp.3d 983 (2021) ("*Varela*"). If the Court agrees with *Varela* that the exclusion either is limited to damage caused by water from a natural source, or at a minimum does *not* unambiguously apply to the failure of subsurface domestic freshwater supply lines, State Farm's motion fails.

Second, if the Court were to find that the Policy exclusion unambiguously applies to damage resulting from the abrupt failure of a subsurface domestic supply line, State Farm will have to convince the Court, in addition, that contrary to the factual assertions in the FAC, as a matter of law, the exclusion precludes coverage of the Hernandezes' loss.

As we demonstrate below, both arguments are unavailing.

**I.      The Policy Does Not Unambiguously Exclude Damage Caused by the Failure of a Subsurface Pressurized Supply Line.**

State Farm and the Hernandezes agree on this much: if the Policy does not expressly and unambiguously exclude damage caused by an abrupt release of water from a failed subsurface, pressurized freshwater supply line, State Farm's sole basis to deny the claim was unjustified and dismissal is inappropriate. The parties also agree the Court may decide that question now.[2]

Before reaching the substance of the dispute, we articulate the relevant rules of interpretation and a few essential elements of the Hernandezes' Policy. State Farm omits all such analytic guidance from its discussion. (Motion, pp.16:1-17:4.)

**A.      The Policy and the Applicable Rules of Interpretation.**

**1.      Interpretation of a Property Insurance Policy.**

---

[2] *See Varela v. State Farm Gen. Ins. Co.*, 555 F.Supp.3d 983 (2021) [deciding the same issue as a matter of law on the same limited factual basis, although in the context of State Farm's motion for summary judgment].

The Policy interpretation question presented by State Farm's motion is a matter of law to be decided by the Court. *Varela,* 555 F.Supp.3d at 988. Under California law, which applies here, pursuant to the *all-risk* policy it issued, State Farm has the burden of establishing that a specific policy exclusion applies. *Id.* at 989.

These rules govern the Court's interpretation of the Policy:

- If contractual language is clear and explicit, it governs.
- A contract term is ambiguous when it is capable of two or more constructions, both of which are reasonable.
- Coverage clauses are broadly construed so as to afford the greatest possible protection to the insured and exclusionary clauses are interpreted narrowly against the insurer.
- Courts resolve ambiguities in favor of coverage.
- If a reasonable insured could interpret the Policy as providing coverage for a loss, that interpretation is to be adopted by the court.

*Varela,* 555 F.Supp.3d at 989, 991 (internal citations and quotation marks omitted).

> **2.   The Policy is *All Risk* and Expressly Covers Damage Resulting from an Abrupt and Accidental Discharge of Water from a Plumbing System.**

The Hernandezes' State Farm Policy covers damage to their home due to "accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy." (FAC, Exh. A, p.12; Docket No.20, p.47 (emphasis in original).) Under such "all risk" coverage, the Policy grants coverage for an unfettered universe of covered perils. Logically, that "all-risk" universe includes both risks identified in the Policy, as well as those left unnamed. *All-risk* means exactly that—coverage for *all* risks.

One such covered peril in the Policy—expressly described in a list of so-called *specified* perils in the Policy's contents coverage—is an "Abrupt and accidental discharge … of water … from within a plumbing … system[.]" (FAC, Exh. A, p.14; Docket No.20, p.49.) Given the *all-*

Opposition to State Farm Motion to Dismiss

*risk* coverage as to damage to the dwelling, *all-risk* necessarily includes the peril described in the contents coverage, namely damage to the home resulting from the abrupt failure of a water supply line. Thus, barring applicability of an express and unambiguous exclusion, damage to the home caused by "Abrupt and accidental discharge … of water … from within a plumbing … system" is covered.

### 3.    The "Below the Surface" Exclusion.

The Policy's *all-risk* coverage applies to damage to the dwelling caused by an abrupt release of water from *any* failed water supply line. But State Farm had every right to limit that broad coverage with an exclusion. Such an exclusion need not be *rational*—for example, nothing in the law precludes State Farm from excluding such losses which occur on a full moon.

But the law requires such exclusions to be "stated clearly to apprise the insured of its effect, *i.e.,* the exclusionary clause must be *conspicuous, plain and clear." Northfield Ins. Co. v. Sandy's Place, LLC*, 530 F.Supp.3d 952, 963 (E.D. Cal., 2021). "To be enforceable, a policy provision limiting coverage otherwise reasonably expected under the policy must be so drafted that a reasonable purchaser of insurance would have both noticed it and understood it." *Ibid*.

The exclusion State Farm relied on to deny the Hernandezes' claim says this:

> "***We*** will not pay for, under any part of this policy, any loss that is caused by one or more of the items below, regardless of whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the ***residence premises***, arises from natural or external forces, or occurs as a result of any combination of these:…c. **Water**, meaning:…(8) water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a ***building structure***, sidewalk, driveway, swimming pool, or other structure[.]"

(FAC, Exh. A, pp.16-17; Docket No.20, pp.51-52 (emphases in original).)

The core question presented by State Farm's motion—the very question the *Varela* court faced, and answered, five years ago, finding a slightly differently worded exclusion fatally ambiguous (555 F.Supp.3d at 991)—is this: given the Policy's express coverage for "Abrupt and

9

accidental discharge … of water … from within a plumbing … system", does the "water below the surface" exclusion unambiguously apply to damage caused by the abrupt and accidental discharge of water from a subsurface domestic water supply line?

As we demonstrate, although it received clear marching orders from the *Varela* court regarding changes to the Policy necessary to permit application of the exclusion to such losses, State Farm's edits to the provision after *Varela* fall far short of fixing the problem. The ambiguity remains.

### B.    The Express Grant of Coverage is Irreconcilable with State Farm's Reading of the Policy Language.

The Policy expressly identifies and broadly *covers* the peril at issue here—an abrupt discharge of water from a plumbing system—without limitation. The *Varela* court found that circumstance irreconcilable with State Farm's argument that the "water below the surface" exclusion *unambiguously* applies to such losses involving a subsurface line: "That a policy would cover a sudden discharge or burst of water from a plumbing or heating system, but only to the extent the plumbing pipe is above ground, and yet not provide coverage for discharged water from the portions of that pipe that are located underground, would truly be an unreasonable interpretation of the Policy's language." *Varela,* 555 F.Supp.3d at 992-93, citing *Broome v. Allstate Ins. Co.*, 144 Ga. App. 318, 319, 241 S.E.2d 34 (1977) ["water below the surface of the ground" exclusion does not apply to a subsurface burst pipe when the policy elsewhere specifically affords coverage with respect to water from a plumbing system and that section made no mention of subsurface water]. So it is here.[3]

As *Varela* found, having expressly afforded coverage for damage resulting from abrupt discharges of water from plumbing lines, the Policy falls short of expressly and unambiguously limiting the universe of those covered plumbing line failures to lines that are *above* ground.

### C.    As the *Varela* Court Concluded, the "Water Below the Surface" Exclusion is Fatally Ambiguous.

---

[3] We are aware that the *Varela* policy language is slightly different than the exclusionary language at issue here. We address those differences in detail below (Argument I(C)(4), *supra*)—none save State Farm from the conclusion that the Policy is fatally ambiguous. But in any case, the *Varela* court's analysis on *this* point applies to both policies equally.

Opposition to State Farm Motion to Dismiss

**1.    State Farm Could Have, but Did Not, Unambiguously Exclude from its Grant of Coverage for "Abrupt and accidental discharge … of water … from within a plumbing … system …" the Subset of Losses in which Plumbing Lines are Below Ground.**

Since the *Varela* court's express guidance on the point five years ago, State Farm has known how to unambiguously exclude the type of loss at issue here, namely, the failure of a subsurface pressurized supply line. Where State Farm restricts its affirmative coverage for "Abrupt and accidental discharge or overflow of water … from within a plumbing … system", it does so by referring to the home's *plumbing system. Varela,* 555 F.Supp.3d at 90. The Policy here does so repeatedly, for example:

- Following the express coverage grant described above, having allowed coverage for the discharge of water, the Policy excepts "water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water that enters into and overflows from within a sump pump" (FAC, Exh. A, p.14; Docket No.20, p.49);

- Later, the Policy generally excludes "freezing of a plumbing … system or … discharge … from within the system … caused by freezing." (FAC, Exh. A, p.15; Docket No.20, p.50);

- The Policy excludes "water … from outside the residence premises plumbing system that enters through sewers or drains" (FAC, Exh. A, p.17; Docket No.20, p.52); and

- The Policy excludes "seepage or leakage of water … that occurs or develops over a period of time: … and is: (i) continuous; (ii) repeating; (iii) gradual; (iv) intermittent; (v) slow; or (vi) trickling; and (b) from a … plumbing system" (FAC, Exh. A, p.17; Docket No.20, p.52).

But contrary to these provisions, the word "water" in the "below the surface" exclusion is undefined and unattached to any building system or components. Given the carrier's repeated reference in its other exclusions to the dwelling's "plumbing system," the lay insured is left to conclude that the "water below the surface" exclusion is *not* aimed at limiting the general grant

of coverage for "Abrupt and accidental discharge or overflow of water … from within a plumbing … system[.]" That is because when a State Farm exclusion intends to apply to the domestic plumbing system, it *says so.* The lay insured is left to conclude that by "water below the surface of the ground" State Farm means *groundwater,* that is, from a natural source, and *not* water discharged from a failed subsurface freshwater line.

Relatedly, although it could have done, in the exclusion State Farm did not refer to water *below the foundation*, or *the floors*, or *the house*. It said water below *the ground*. A reasonable layperson would conclude *the ground* means areas beyond the insured structure, and thus that the exclusion is targeted at water with its source beneath the surface of the earth, that is, naturally occurring subsurface water. That is precisely the reading the *Varela* court applied to the Policy. 555 F.Supp.3d at 990-91, citing *Ahluwalia v. Allied Prop. & Cas. Ins. Co.*, 2012 WL 2681801 (E.D. Cal. July 6, 2012) ["below the surface" exclusion means damage caused by natural groundwater].

Given State Farm's reference to the "plumbing system" in the affirmative coverage grant, and its repeated reference to the "plumbing system" in various exclusions, the cannon of contract interpretation *expressio unius est exclusio alterius* argues against a finding that the exclusion at issue unambiguously applies to the abrupt discharge of water from a subsurface freshwater supply line. The rule provides that "to express or include one thing implies the exclusion of the other, or of the alternative." *Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability Plan*, 39 F.Supp.3d 1103, 1107 (C.D. Cal., 2014).

As the *Varela* court explained, State Farm's repeated tying of the coverage grant and various exclusionary carve-outs to the home's "plumbing system" means that by omitting that reference in the "below the surface" exclusion, at a minimum State Farm left the lay insured unclear as to what the exclusion intends. 555 F.Supp.3d at 992-93, citing *Broome v. Allstate Ins. Co.*, 144 Ga. App. 318, 319, 241 S.E.2d 34 (1977) ["water below the surface of the ground" exclusion did not apply to a burst pipe where *another section of the insurance policy specifically dealt with coverage with respect to water from a plumbing system and that section made no mention of subsurface water*.]

12

Finally, where courts have favored State Farm's expansive reading of the "water below the surface" exclusion, the carrier employed a prefatory phrase like "regardless of cause." *See e.g., Colella v. State Farm Fire & Cas. Co*, 407 F. App'x 616 (3d Cir. 2011); *Palek v. State Farm Fire & Cas. Co.*, 2020 WL 5077461 (W.D. Pa. Aug. 26, 2020). In fact, State Farm used that phrase in the Hernandezes' Policy, but only as to exclusions relating to losses caused by earthquakes and nuclear hazards. (FAC, Exh. A, p.15; Docket No.20, p.51 ["We will not pay for such a loss *regardless of ... the cause of the excluded event*[.]" (emphasis added)].) No such phrase is present here.

Had State Farm warned the Hernandezes that damage caused by "water below the surface of the ground," *regardless of the cause,* is excluded, the carrier would have a better argument that it unambiguously narrowed the affirmative grant of coverage in the Policy for abrupt discharge of water from the plumbing system. But although the *Varela* court provided express guidance on this point as well (555 F.Supp.3d at 993-94), State Farm omitted that language in the exclusion at issue here when it modified the Policy after the *Varela* ruling.[4]

### 2. The Listed Water Exclusions that Do Not Specifically Include Plumbing System Failures are Directed at External Water Hazards.

As the *Varela* court held, another source of ambiguity is the fact that where State Farm excludes water-related perils but does *not* specifically reference the plumbing system, it aims at external water hazards like floods, surface water, and so forth. *Id.* at 995. For example, the exclusions include flood, surface water (which, notably, does *not* exclude losses relating to the failure of building components, such as "the release of water from a swimming pool, spigot, sprinkler system, hose, or hydrant"), waves (including tidal wave, tsunami, and seiche), and tides or tidal water, and overflow of any body of water. (FAC, Exh. A, p.17; Docket No.20, p.52.)

Discussing the Florida Court of Appeal's decision in *Kokhan v. Auto Club Insurance Company of Florida.*, 297 So.3d 570, 575 (Fla. Dist. Ct. App. 2020), *Varela* said this:

> In *Kokhan*, the court found the 'water below the surface of the

---

[4] As the FAC alleges, that choice was based on the risk that expressly narrowing the coverage would likely have resulted in a rate reduction. (FAC ¶¶63, 79.)

Opposition to State Farm Motion to Dismiss

ground' exclusion to refer to only naturally occurring water based in part on the context of the other four water damage exclusion subsections in the policy at issue, all of which also plainly [referred] to naturally-flowing water or waterborne material or substances existing outside of the plumbing system. [] As in *Kokhan*, the other water damage exclusions in plaintiff Varela's policy refer only to natural water or water outside the plumbing system.

555 F.Supp.3d at 995 (internal citations and quotes omitted).

Given the references to external water hazards, the *Varela* court concluded that the "water below the surface" exclusion is at a minimum fatally ambiguous. The same problem dooms the Policy at issue here.

### 3. Courts Typically Find the "Water Below the Surface" Exclusion to Apply to Ground Water or Natural Water Sources.

Courts around the country, including the Northern District of California, applying California law,[5] have held that *the exclusion is limited to water from natural water sources* to wit:

[T]he exclusion should be construed as applicable to water which is below the surface of the ground as a result of natural causes, and not water which happens to be found below the surface as a result of artificial devices such as pipes. To adopt [a contrary] interpretation would result in an unintended distinction whereby a leak from a plumbing system would be covered if the damaged pipe was above the ground but would be excluded if the pipe was below the surface. *Had the defendant wished to create such a distinction so as to exclude coverage only for accidental discharge, leakage or overflow which takes place below the surface, it could*

---

[5] *Anderson v. USAA Cas. Ins. Co.*, No. C 06-07948 WHA, 2008 WL 619004, at *7 (N.D. Cal. Mar. 4, 2008) ["Leakage from a radiant heating system . . . did not constitute subsurface waters."]

14

Opposition to State Farm Motion to Dismiss

*have done so by express language to that effect.*"[6]

Here is the Florida Court of Appeal's view: the exclusion "plainly refers to *naturally-existing ground water*, based on the description of the type of structures which may be affected by its exertion of pressure, seepage, leakage, or flow. In other words, this exclusion plainly refers to naturally-flowing water exerting pressure from *outside of* the plumbing system, not a leak from *within* the plumbing system itself." *Kokhan,* 297 So.3d 570 at 575 (emphases added). These authorities are consistent with *Varela* and weigh in favor of the Hernandezes' position here.

### 4.    The Differences Between the Hernandez and Varela Policies Do Not Save the Exclusion From a Finding of Fatal Ambiguity.

At the close of its opinion, almost exactly five years ago, the *Varela* court provided the following guidance to State Farm: "If defendant State Farm had wished to exclude from coverage water damage caused by burst plumbing pipes beneath plaintiff's home, it could have done so explicitly and clearly, just as it did with respect to the other provisions related to plumbing in the Policy." 555 F.Supp.3d at 995.

In its *Varela* argument (Motion, pp.16:2-17:4), State Farm notes that *Varela* is not controlling. That is true. *Varela's* reasoning is correct, and the Court should find its analysis persuasive. State Farm's other point is that it fixed the *Varela* problem by changing the Policy. But as we demonstrate, State Farm is mistaken.

### a.    State Farm Did Not Expressly Tie the Exclusion to the

[6] *Cantanucci v. Reliance Ins. Co.,* 43 A.D.2d 622, 349 N.Y.S.2d 187 (3d Dep't), *aff'd,* 35 N.Y.2d 890, 364 N.Y.S.2d 890, 324 N.E.2d 360 (1973) (emphasis added); *see also Cozza ex rel. Cozza v. State Farm Fire & Cas. Co.*, 440 F. App'x 73, 75 (3d Cir. 2011) [exclusion does not cover water that escapes from a plumbing system]; *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1141–42 (Alaska 2000) ["An individual could reasonably interpret this as water from a natural or external source seeping through the structure."]; *Mellon v. Hingham Mut. Fire Ins. Co.*, 19 Mass. App. Ct. 933, 472 N.E.2d 674, 675 (1984) [exclusion for "water below the surface of the ground" did not exclude damage from drainage pipe's rupture because the "loss was caused by an accidental break rather than a natural occurrence" and, as a fortuity, was "the kind of risk an 'all risk' policy is designed to cover."]; *Robert Dorsen, Inc. v. Aetna Cas. & Sur. Co.*, 562 F.Supp. 495, 496–97 (D. D. C. 1983) [exclusion does not apply to release of water from plumbing system]; *Redstone Corp. v. Fire Ins. Exch.*, 715 F.Supp. 300, 301 (D. Colo. 1989) [exclusion only applies to natural water sources]; *Adrian Assocs. Gen. Contractors. v. Nat'l Sur. Corp.*, 638 S.W.2d 138, 140–41 (Tex. Ct. App.1982) [same]; *Hatley v. Truck Ins. Exch.*, 261 Or. 606, 624, 495 P.2d 1196, 1197 (1972) ["the exclusion of 'water below the surface of the ground' was intended to have the general meaning of subterranean waters, whether percolating waters or underground streams."]

Opposition to State Farm Motion to Dismiss

**Plumbing System.**

*Varela's* central point could not have been lost on State Farm: if you want to exclude the failure of subsurface freshwater plumbing lines, *say so,* "just as [State Farm] did with respect to the other provisions related to plumbing in the Policy." 555 F.Supp.3d at 995. But notwithstanding *Varela's* direct invitation to the carrier to fix the exclusion by referring, as it does repeatedly in many other Policy exclusions, to the home's "plumbing system", State Farm again omitted any such language from the Policy exclusion at issue here.

As the *Varela* court advised, State Farm *might* have added phrases like "water escaping from a plumbing system below the surface of the ground," or "water escaping from any underground domestic water pipe," or "water from buried plumbing lines," or "water discharged from underground plumbing." Instead, State Farm left out any such express reference to losses resulting from failed subsurface domestic water supply lines.

That drafting choice leaves precisely the ambiguity *Varela* identified. The Policy still requires the insured to *infer*, rather than *read,* that the "below the surface of the ground" exclusion applies to damage caused by failed subsurface domestic freshwater lines. Given the affirmative coverage and read in the context of other exclusions which *do* refer to the household plumbing system, the exclusion does not unambiguously apply.

### b. State Farm Did Not Use "Regardless of the Cause" Prefatory Language.

As the *Varela* court found (555 F.Supp.3d at 993-94), and contrary to State Farm's exclusionary language in the Hernandezes' Policy that applies to earthquakes, the "water below the surface" exclusion does not use prefatory language explaining that it applies "regardless of the cause." That omission, too, leaves the exclusion in its pre-*Varela* ambiguous state.

### c. Prefatory Language Relating to the Location of the Loss Did Not Solve State Farm's Ambiguity Problem.

The Policy is different than the policy at issue in *Varela* in that it adds the following prefatory language: "occurs on or off the residence premises." (FAC, Exh. A, p.15; Docket No.20, p.51.) That prefatory language applies to six exclusionary sections, ranging from intentional losses to losses caused by fungus. (FAC, Exh. A, pp.16-18; Docket No.20, pp.51-53.) It also applies to the ten sections included under the umbrella "water," and thus to the "below the

16

surface of the ground" exclusion. (FAC, Exh. A, p.17; Docket No.20, p.52.)

But the language does not solve the *Varela* problem; indeed, State Farm never suggests otherwise in its brief.[7] That is because the ambiguity does not arise from a lack of clarity about the *location* of the excluded event. A discharge of subsurface water can occur on or off an insured property, from either natural sources or domestic plumbing lines.

The issue here is *source.* The question is whether a lay insured would read the "water below the surface of the ground" exclusion to mean ordinary subsurface water/groundwater conditions, on or off the property, or whether the exclusion unambiguously includes a discharge of water from a failed subsurface supply line. As we have argued, the provision either means the former, or it is fatally ambiguous. The additional prefatory language did not solve the *Varela* problem.

### d.    The Addition of "Sewage" to the Exclusion Did Not Solve State Farm's Ambiguity Problem.

State Farm's sole argument distinguishing *Varela* is this: by expanding the "below the surface" exclusion to include *sewage,* a lay insured would now understand that *water* below the surface of the ground includes a discharge from a subsurface freshwater supply line. The argument is unavailing for many reasons.

First, damage caused by discharged *sewage*, and discharged *water,* are separate perils, separately excluded. The loss here involves freshwater from a domestic supply line, not sewage, so expansion of the exclusion to cover discharged *sewage* does nothing to clarify whether discharged *water* from a subsurface *supply* line is excluded.

Even if State Farm is correct that a lay person would gather from the exclusion that *sewage* below the surface of the ground includes waste discharged from a broken line on the insured property—an assertion which, as appears, is contrary to the Policy and to logic—the reference to *water* remains ambiguous for the reasons previously set forth.

Second, and relatedly, State Farm specified in the exclusion *one* non-natural fluid it

---

[7] Given State Farm's summary treatment of the *Varela* issue, the carrier may assert this argument for the first time in its reply brief. Although the Court would be entitled to ignore such argument (*Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007)), we address it in the first instance here.

Opposition to State Farm Motion to Dismiss

wanted to capture (sewage) but did *not* expressly exclude "water from a plumbing system" or "water escaping from a failed plumbing line." Under *expressio unius* and the rule that every word is given effect (*New York Marine and Gen. Ins. Co. v. Penske Truck Leasing Co., L.P.*, 457 F.Supp.3d 912, 916 (D. Nev., 2020); Cal. Civ. Code §1641), naming sewage while leaving "water" undefined as to source signals to the lay insured that subsurface *water* means what *Varela* and the various cases cited previously said it means—natural groundwater.

Third, State Farm's argument presumes, mistakenly, that the Policy unambiguously excludes *domestic* waste line failures. Notably, the insurer added *sewage* not only to the "below the surface" exclusion, but to the affirmative grant of coverage. *Compare Varela,* 555 F.Supp.3d at 992 ["Sudden and accidental discharge … *of water or steam from within a plumbing …* system"] with FAC, Exh. A, p.14; Docket No.20, p.49 ["Abrupt and accidental discharge … *of water, steam, or sewage from within a plumbing … system*"] But as we have explained, the express coverage *grant* is for discharges (for both water and sewage) *from the plumbing system.*

As the *Varela* court articulated: "That a policy would cover a sudden discharge or burst of water from a plumbing … system, but only to the extent the plumbing pipe is above ground, and yet not provide coverage for discharged water from the portions of that pipe that are located underground, would truly be an unreasonable interpretation of the Policy's language." 555 F.Supp.3d at 992-93.

That analysis applies with even more force to *sewage,* given that waste lines are primarily underground. In other words, if by adding *sewage* the "below the ground" exclusion removes from coverage all damage caused by discharge of not only water, but *waste* from subsurface domestic plumbing lines, the affirmative grant is illusory.

Also, given the *Varela* court's clear guidance, if State Farm had wanted to exclude all damage caused by effluents under the ground, including those emitted from both incoming and outgoing domestic plumbing lines, it knew perfectly well how to do so—either (a) as it does throughout the Policy, it could have either expressly referred to discharges from portions of the plumbing system, and/or (b) it could have used the prefatory phrase "regardless of cause." But it did neither. Given the affirmative grant of coverage, the addition of the word *sewage* here only

18

added to the ambiguity.

Fourth, State Farm's argument that its use of "the term 'sewage' in the same clause as 'water' forecloses the argument that the exclusion reaches only naturally occurring water sources" relies on the presumption that "sewage can originate only from a plumbing system." (Motion, p.16:18-20.) But the presumption is mistaken. There are myriad scenarios imaginable in which there is no active peril involving accidental discharge of sewage from a waste line—for example, where waste water is deposited intentionally into a natural body of water like the Pacific Ocean—but an active peril such as storm surge, or heavy rain resulting in rising ground water, results in damage to a home from underground waste.

Indeed, "sewage below the surface of the ground" reads most logically as the sewage analog of groundwater—subsurface sewage that has migrated into the soil (*e.g.,* a failed septic field, a below-grade municipal main, sewage-contaminated groundwater) — which is consistent with the view that the exclusion applies to natural and/or subsurface-conditions.

Fifth, even if State Farm were correct that sewage only comes from a failed plumbing system, the argument it asserts on that basis goes nowhere. It asks the Court to find that because waste comes from a plumbing system, a lay insured would necessarily understand the exclusion to apply to the discharge of *water* from a failed subsurface water supply line.

But lacking the reference to the domestic plumbing system that appears in various other exclusions, together with the requirement that water or sewage that "exert[s] pressure on, or seep[s] or leak[s] *through*" various insured structures,[8] a homeowner most likely would read the exclusion to refer to sewer backup, municipal sewer conditions, septic conditions, underground sewage migration, or natural water conditions such as rain infiltration or ground water movement. Nothing in the exclusion plainly informs a lay insured that it applies to the discharge of freshwater from a subsurface freshwater pressurized supply line.

Finally, as we have described, the *Varela* policy also referenced "sewage"—namely, it

---

[8] To remind the Court, the Policy excludes "water or sewage below the surface of the ground, including water or sewage that exerts pressure on, or seeps or leaks through a building structure, sidewalk, driveway, swimming pool, or other structure[.]"

Opposition to State Farm Motion to Dismiss

excluded "water or sewage from outside the residence premises plumbing system that enters through sewers or drains." 555 F.Supp.3d at 995. The court was unmoved; citing *Kokhan*, it stressed that the surrounding water subsections all referred to naturally-flowing water or waterborne material existing *outside of the plumbing system. Ibid.* Adding the word "sewage" to the subsurface exclusion does not escape that logic; subsurface sewage is still outside the pressurized plumbing system State Farm repeatedly references in its other water-related exclusions.

### D.    Conclusion.

*Varela* gave State Farm unmissable guidance: if you want to exclude damage caused by blown domestic supply lines that are underneath the ground, say so. State Farm chose not to clarify the point and did so for economic reasons. (FAC ¶¶63, 79.) For the reasons set forth in *Varela,* and as articulated above, the "below the surface" exclusion either does not apply to the discharge of water from a subsurface freshwater supply line, or at a minimum the exclusion is fatally ambiguous.

## II.    The Facts Alleged in the FAC are Sufficient to Survive Rule 12(b)(6) Scrutiny.

If the Court concludes the "water below the surface" exclusion unambiguously applies to damage caused by the abrupt discharge of water from a subsurface supply line, it can accept State Farm's invitation to end this litigation at the pleading stage only if the Hernandezes have failed to allege that coverage applies anyway, and that they cannot amend to cure any shortcoming. State Farm's argument for dismissal with prejudice is unavailing.

### A.    The FAC Adequately Alleges the Exclusion Does Not Apply to This Loss.

#### 1.    The Exclusion Does Not Apply Because the Failed Portion of the Plumbing Line Was Part of the Building Structure

Even if the Policy exclusion applies to failed subsurface supply lines, if the failed section of the line is part of the *building structure*, as State Farm defines the phrase—namely in the slab or in materials used as fill material below the slab—the exclusion does not apply. The FAC contains that allegation exactly. (FAC ¶¶24-26, 37-45.)

#### 2.    The Exclusion Does Not Apply Because the Escaped Water Did Not Exert Pressure on or Seep or Leak Through the Building Structure.

Opposition to State Farm Motion to Dismiss

The exclusion disclaims coverage for damage caused by "water that exerts pressure on, or seeps or leaks through a building structure[.]" Even if the provision applies unambiguously to failed subsurface supply lines, the exclusion also does not apply because here the water did not "exert pressure on, or seep or leak *through* a building structure." Instead, as Plaintiffs have alleged, the water discharged from a failed line inside the home directly into living spaces, caused extensive damage, and rendered the home uninhabitable. The exclusion therefore does not apply.[9]

### B.    State Farm's Reliance on the Sham Pleading Doctrine is Misplaced.

In the face of allegations that render the "below the surface of the ground" exclusion inapplicable even if it unambiguously applies to the failure of a subsurface domestic supply line, State Farm argues the FAC is a "sham pleading." As we demonstrate, the argument is unavailing.

State Farm correctly informs the Court that Plaintiffs originally alleged that their plumber "demolished an area of the floor in the wall of the bathroom and determined the cause of the water intrusion to be a vertical pipe just below the dirt located laterally to the slab." (Motion, p.9:23-25.) State Farm argues that because that allegation was "clear and unambiguous" it cannot validly be contradicted in an amended complaint. (Motion, p.9:22.)

That is wrong.

First, as Plaintiffs explained at FAC ¶23, having been alerted to the issue by State Farm, Plaintiffs reviewed the evidence and concluded the use of the word "dirt" in the Complaint was imprecise, and therefore ambiguous. *Soil* is a mixture of organic remains, clay, and rock particles. *Dirt* is something else, and as used in the claim likely was intended to mean *not the concrete slab,* rather than unaugmented *soil.*

---

[9] Plaintiffs alleged the loss was covered under the all-risk Policy (FAC ¶¶32-35), and that State Farm failed to demonstrate the cause of the loss is an expressly excluded peril. (FAC ¶36.) The Hernandezes likewise alleged that the failed portion of the line was part of the building structure. (FAC ¶¶37-45.) Finally, the FAC alleged that the water source was interior to the home, not external or below the poured slab. (FAC ¶¶12, 13, 15, 25.) They did not specifically allege this additional theory for their oft-asserted allegation that State Farm's denial was improper. To the extent that is a shortcoming in the FAC, the Court should permit leave to amend. *Andrews v. City of Saint Helens*, 2024 WL 2116469, at *1 (D. Or., 2024).

21

Second, even if the Court were to find that the FAC contains an inconsistent allegation, "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007).

State Farm concludes its argument by asserting that the amendment is "plainly tactical" (Motion, p.10:9) and repeatedly accusing Plaintiffs of not offering any "explanation … for the change. The FAC provides no explanation for why the plumber's prior characterization of the pipe as 'just below the dirt' was incorrect, incomplete, or since corrected through additional investigation. The prior allegation disappears without accounting." (Motion, p.10:15-18.)

Plaintiffs' amendment relating to the precise location of the failure point on the PEX line was certainly a response to State Farm's argument that references to "dirt" in the Complaint justified application of the "below the surface" exclusion as a matter of law.

But contrary to State Farm's assertion, such a *tactical* amendment was not offered without explanation. The opposite is true. Well aware of their obligation under Rule 11, and acting entirely in good faith, Plaintiffs carefully explained in the FAC that the prior use of the word "dirt" in the complaint had been imprecise and thus ambiguous (FAC ¶23), and followed with detailed allegations that, in fact, the failure point was in *fill,* not *soil*, and therefore was part of the *building structure*, as State Farm defines that phrase. (FAC ¶¶24-26, 37-45.) Plaintiffs even incorporated a photograph in the FAC which shows the precise location of the failed portion of the supply line and asserts that the location was in the *building structure*. (FAC ¶42.)

The FAC contains no inconsistent or contradictory allegation—instead, it fixes an ambiguity. To the extent State Farm, which has yet to inspect the property, can prove otherwise, it is free to do so. But it has provided no valid basis to dismiss the FAC.

**C.      State Farm's Reliance on the Incorporation Doctrine is Misplaced.**

State Farm also seeks dismissal with prejudice on the basis of two plumber's invoices

22

(State Farm Request for Judicial Notice ("RJN") in Support of Motion to Dismiss, Exhs. B, E), a video taken of the exterior of the home with commentary by Ashley Hernandez (RJN, Exh. C), and three photographs (RJN, Exh. D).

Although it attaches the four exhibits to its Request for Judicial Notice, neither in the Request nor in its Motion to Dismiss, does State Farm argue that the documents may be judicially noticed pursuant to Federal Rule of Evidence 201. Instead, State Farm seeks the Court's reliance on these documents under the incorporation-by-reference doctrine. As we will establish, the rule does not help State Farm in its effort to end this litigation at the pleading stage.

### 1. The Rule of Incorporation by Reference.

Generally, district courts do not consider material outside the pleadings when assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). There are two exceptions: the incorporation-by-reference doctrine, and judicial notice under Rule 201. State Farm only relies only on the former.

"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id*. at 1002.

In the Ninth Circuit, "a defendant may seek to incorporate a document into the complaint if the plaintiff *refers extensively* to the document or *the document forms the basis of the plaintiff's claim*. How extensively must the complaint refer to the document? This Court has held that the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Ibid.* (Internal citations and quotation marks omitted; emphases added).

The Ninth Circuit has also limited the inferences a court may draw from an incorporated document, advising courts to approach the inference issue "with caution": "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint. This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Id.* at 1003.

Finally, *Khoja* warned that the "overuse and improper application of…the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id.* at 998.

### 2. None of the Documents is Subject to Incorporation, and None Proves the Failed Portion of the PEX Supply Line Was Not Part of the Building Structure.

Under *Khoja,* incorporation-by-reference is permissible if (a) the Hernandezes referred extensively to the materials in their pleading, or (b) if the documents form the basis of their cause of action for insurance bad faith. Neither has occurred here. Also, under *Khoja,* even if the Court were to accept State Farm's request to incorporate one or more of the documents, the Court should not settle factual disputes arising from any incorporated documents at the pleading stage.

### a. Exhibit B and E – Plumber's Invoices.

Exhibit B to State Farm's RJN is a March 8, 2025, invoice from Easy Drains Plumbing. The "Bill to" is "Suzy Owen." It contains various entries including a description of the loss. State Farm's argument for incorporation is this: "The FAC relies on the plumber's investigation as the factual foundation for its new coverage theory, characterizing the plumber's findings as establishing that the pipe was in 'fill' adjacent to the slab and within the Policy's 'building structure.' (FAC ¶¶ 23-25.)" (Motion, p.6:14-17.)

Exhibit E to State Farm's RJN is a second version of the March 8 invoice from Easy Drains Plumbing. The "Bill to" is the same, "Suzy Owen." It contains a description of a water loss. State Farm's argument for incorporation is this: "RJN Exhibit E is the Revised Plumber Report from Easy Drains Plumbing, also dated March 8, 2025, but received by State Farm on April 2, 2025, after the coverage determination had already been issued. [10] This document is

---

[10] The assertion regarding (a) the fact that State Farm received the revised report, and (b) the timing of its receipt vis a vis State Farm's denial of the claim, is nowhere to be found in the FAC, or in the document itself. Instead, although the motion lacks any citation, the assertion seems to rely on a State Farm employee's declaration, as to which State Farm seeks neither

24

before the Court as an incorporated document. (FAC ¶¶ 23-25.)" (Motion, pp.6:26-7:1.)

The FAC paragraphs State Farm cites contain no reference to *any* plumber's report, original or revised. (FAC ¶¶23-25.) Paragraphs 23 and 24 contain no reference to *any* report. Paragraph 25 refers to a plumber's "determination," but not to any document.

Giving State Farm every benefit of the doubt, although its motion never mentions paragraph 27 of the FAC, that paragraph says, "Plaintiffs submitted *the plumber's determination* to State Farm, along with photographs and videos of the site of the loss which show the failed portion of the supply line was within the 'building structure' as defined by the Policy." But even allowing State Farm to rely on a FAC paragraph it did not cite in its motion and accepting that the word *determination* can be read to refer to a written report, neither Exhibit B nor E is subject to incorporation.

First, the passing reference to the *determination* in paragraph 27 does not contain the contents of either report, nor does the paragraph describe in any detail the determination itself or the contents of any report submitted to State Farm. The FAC certainly did not cite *extensively* to either report and thus incorporation on that basis is improper.

Second, as to the issue of *coverage*, the FAC does not rely on either *report*; certainly, it cannot be said that the reports *form the basis of the Plaintiffs' claim.* Indeed, the FAC could not have done so logically because it was the contents of the reports that created the very imprecision and resulting ambiguity that led to the amendment, namely, the references in the reports to "dirt."

Instead, in their FAC Plaintiffs allege that the failed section of the water supply line was located in drainage material or fill, that there was no evidence the failed area of the line was in unaugmented soil, and that the plumber hired to fix the line "determined" the "failed vertical PEX supply line [was] in an area of fill adjacent to the poured slab foundation of the property." (FAC ¶¶24-26, 40.) Thus, Plaintiffs did *not* rely on the reports to allege coverage.

Finally, even if the Court were to incorporate the two reports, they do not fatally contradict the FAC's coverage allegations. The FAC alleges that the failed portion of the vertical

judicial notice nor incorporation by reference. (Declaration of Donna Blazewich in Support of Motion to Dismiss, Dkt. 25.) The reliance is therefore improper.

25

PEX pressurized supply line was in drainage material adjacent to the slab, which means it was part of the "building structure" and could not therefore have been subject to the "water below the surface of the ground" exclusion. (FAC ¶¶24-26, 37-45.) The plumber's reports do not contradict that assertion. Instead, the first report says the "break was located just beneath the surface of the dirt[.]" (RJN, Exh. B.) The second report says essentially the same. (RJN, Exh. E.) The problem, of course, is the use of the word "dirt," which could mean soil (if State Farm prevails on the point), or it could mean fill material, which means part of the building structure. The dispute remains to be litigated. Resolution on the face of the pleading would be improper under *Khoja*.

### b.    Exhibits C and D – Video and Photos.

State Farm's incorporation theory likewise fails as to the video and three photos. State Farm informs the Court that "RJN Exhibit C is a Video submitted by Plaintiffs to State Farm. The FAC continues to rely on the photographs and video as support for its pipe-location allegations. (FAC ¶ 25.) … RJN Exhibit D consists of the mitigation vendor photographs submitted to State Farm during the investigation of the claim, as referenced in the FAC. (FAC ¶ 25.)" (Motion, p.6:20-25.)

Here is the FAC paragraph State Farm relies on: "Plaintiffs retained a plumber who determined the loss was due to a failed vertical PEX supply line in an area of fill adjacent to the poured slab foundation of the property." (FAC ¶ 25.) The paragraph contains no reference to either a photo or a video.

State Farm seems again to be referring to FAC paragraphs 27 and 40, which state that "Plaintiffs submitted … photographs and videos of the site of the loss which show the failed portion of the supply line was within the 'building structure' as defined by the Policy" and "Plaintiffs' plumber determined, and as is shown in photographs and video provided to State Farm, that the failed portion of the vertical PEX line that failed was *in the building structure*, not below the surface of the ground." (Emphasis in original.)

But State Farm's incorporation theory as to these materials fails for the same three reasons as the plumber's reports. First, State Farm cannot show *any* reference to its Exhibit C and D in the FAC, let alone *extensive* reference, because while the FAC refers generically to

photographs and videos, it does not expressly refer to the three photographs and one video State Farm relies on for its motion to dismiss. In other words, State Farm has *no* evidence its Exhibits C and D are the photos and videos the Hernandezes refer to in the FAC.

A look at paragraphs 42 and 43 of the FAC demonstrates the problem. There, the FAC incorporates and provides a detailed description of one photograph that the FAC *does* allege went to State Farm, and which arguably Plaintiffs rely on to allege coverage. But State Farm's request for incorporation-by-reference does not include *that* photo. Instead, it relies on three photographs and a video *not* expressly identified in the FAC.

Second, and relatedly, State Farm informs the Court that the "FAC continues to rely on the photographs and video as support for its pipe-location allegations. (FAC ¶25.)" (Motion, p.6:20-21.) But the assertion is baseless, whether by reference to the cited paragraph, or any other allegation in the FAC. Certainly the three photographs, and one video, do not *form the basis of the Plaintiff's claim.* Rather, the FAC incorporates *one* photo, which is *not* among those State Farm cites. And nowhere does the FAC identify or rely on Exhibits C or D.

Finally, the *reason* Plaintiffs did not incorporate Exhibits C or D into their FAC is because unlike the photo at FAC ¶42, the documents State Farm offers prove nothing. The video is of the *exterior* of the house and shows an access hole; it does not depict the area of the failed line, or the break in the line itself. The narration has no bearing on the coverage issue to be resolved in this lawsuit.

The unidentified photographs (Exhibit D) State Farm insists are from "the mitigation vendor photographs submitted to State Farm during the investigation of the claim" (Motion, p.6:24-25), are likewise unhelpful. Characterizing and reprinting in its motion one such photo, State Farm informs the Court that it is "a photo of the pipe showing additional excavation in the home in order to complete the repair, included in the report prepared by Plaintiffs' mitigation vendor[.]" (Motion, p.11:10-12.)

But even setting aside that State Farm has no basis to assert the provenance or contents of the photograph, State Farm also has no evidence of, and indeed never *says* that what is pictured is, *the failed PEX line*. Even if it had such proof, the question whether the material surrounding

27

the failed line is fill, or unaugmented soil, remains to be answered. Resolving that dispute at the pleading stage would fly in the face of the *Khoja* court's guidance about overuse of the incorporation doctrine. The FAC presents precisely the sort of "plausible claim" the Ninth Circuit warned should not be resolved by way of dismissal at the pleading stage.

### III.    Plaintiffs' Allegations Relating to State Farm's Breach of the Implied Covenant of Good Faith and Fair Dealing are Sufficient.

State Farm also seeks dismissal with prejudice on the basis that the FAC fails to adequately allege breach of the implied covenant of good faith and fair dealing—so-called, *bad faith*. The argument is unavailing.

The carrier's first point is that absent coverage, there can be no bad faith. That is true. But as we have established, State Farm's arguments for dismissal with prejudice on coverage ground are mistaken. Either the "water below the surface" exclusion generally does not unambiguously apply to damage caused by the discharge of water from failed subsurface water supply lines (Argument I, *supra*), or the FAC contains sufficient allegations that the exclusion does not apply in the circumstances of this loss (Argument II, *supra*).

State Farm also argues the allegations as to bad faith are inadequate. (Motion, p.15:13-17.)  Its motion cites no bad faith case from any court resolved against an insured on a 12(b)(6) motion. That is because, especially in the circumstance of a full denial of a claim involving extensive damage to a home, as occurred here, such disputes can rarely be resolved at the pleading stage. Most of the evidence relating to State Farm's investigation and adjusting of the claim (that is, State Farm's claim file), and its long pattern of unlawfully failing to investigate and pay such claims, is in the sole possession of the carrier, and as such the key evidence is unavailable to its customers without discovery.

In any event, the FAC contains more than sufficient allegations to support the Hernandezes' bad faith cause of action. Bad faith allegations may be premised on either or both of two distinct theories of liability: (a) that the carrier failed to conduct a competent investigation and as a result of that failed inquiry caused harm to its customers (California form jury instruction ("CACI") 2332, citing California cases), or (b) that the carrier unreasonably failed to

Opposition to State Farm Motion to Dismiss

pay a claim. (CACI 2331, citing California cases.) Also, bad faith may be proven by evidence that the carrier's conduct is part of a *pattern* of inadequate investigations and/or improper claim denials.[11] Finally, violation of California law or regulations relating to the investigation and adjusting of property claims is evidence of bad faith.[12]

The FAC alleges the following:

- State Farm told the Hernandezes the loss would be covered (FAC ¶19);

- In violation of 10 CCR §2695.7(d) State Farm thereafter denied the claim without inspecting the home, or having a licensed building professional investigate (FAC ¶¶21, 27-29);

- In violation of 10 CCR §2695.7(d), State Farm never determined the location, cause, or impact of the loss on the home (FAC ¶¶21, 27-29);

- In violation of 10 CCR §2695.7(d), after the denial, State Farm received evidence that the loss was covered, but although it was informed that its customer is disabled and that the decision had and would have a dramatic impact on her health condition, State Farm ignored that evidence, never inspected, and never had a licensed building professional investigate (FAC ¶¶21, 27-29);

- State Farm has a decade-long pattern of unlawfully failing to investigate and baselessly denying water loss claims like the Hernandezes' claim (FAC ¶¶56, 68-72);

- State Farm's own guidelines and training are irreconcilable with its application of the "below the surface" exclusion to failed domestic plumbing lines (FAC ¶57);

- State Farm has intentionally concealed from its customers, agents, and the California regulator, the fact that its own guidelines are at odds with its denial of claims like the Hernandez claim (FAC ¶¶58-60);

---

[11] *Colonial Life & Accident Ins. Co. v. Super. Ct.*, 31 Cal.3d 785, 791 (1982); *Moore v. Am. United Life Ins. Co.,* 150 Cal.App.3d 610, 624 (1984).

[12] *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal.App.4th 847, 916 (2000) ("violations of the section 'may evidence the insurer's breach of duty to its insured under the implied covenant' of good faith and fair dealing with its insured").

- State Farm was informed by the *Varela* court that its policy is fatally ambiguous but failed to amend the policy accordingly (FAC ¶¶61-63);
- State Farm's concealment of its narrowing coverage position as relates to failed domestic plumbing lines was motivated by a desire to avoid a reassessment of its rate structure (FAC ¶64); and
- In violation of California law and regulations, State Farm:
  - misrepresented coverages and Policy provisions;
  - failed to provide the Hernandezes with an adequate explanation of the basis for its denial;
  - required the Hernandezes to find counsel and file a lawsuit to obtain policy benefits due; and
  - denied coverage for a loss it new is covered under the Policy (FAC ¶74).

These allegations are specific and non-conclusory. They allege a long pattern of illegal claim denials by State Farm following inadequate investigations, precisely the alleged circumstances here. The Court should deny the motion or, at minimum, grant leave to amend.

## CONCLUSION

For the reasons set forth, the Court should find that the "water below the surface" exclusion does not unambiguously apply to the failure of a subsurface domestic freshwater supply line. If it reaches the point, it should find that the FAC alleges facts sufficient to support both coverage of the claim, and the allegation that State Farm acted in bad faith.


Date: July 6, 2026                      Kerley Schaffer LLP


                                        /s/ Dylan L. Schaffer
                                        _____
                                        Dylan L. Schaffer
                                        Attorneys for Plaintiffs

30

Opposition to State Farm Motion to Dismiss